UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Jorge Arellano**<br><br>    Plaintiff,<br><br>    v.<br><br>**Clark Construction Group, LLC**<br>a Maryland limited-liability company,<br><br>    Serve: C T Corporation System<br>        4701 Cox Rd., Suite 285<br>        Glen Allen, Va. 23060-6808<br><br>**Grasslands Farm, LLC**<br>a Virginia limited-liability company,<br><br>    Serve: C T Corporation System<br>        4701 Cox Rd., Suite 285<br>        Glen Allen, Va. 23060-6808<br><br>    and<br><br>**Kathleen A. Montgomery**<br><br>    Defendants | Jury Trial Demanded<br><br><br>Case No. 1:19-cv-531 |

## **COMPLAINT**

### **Preliminary Statement**

1. Plaintiff Jorge Arellano brings this case against his former employers: Clark Construction Group LLC, Grasslands Farm LLC, and Kathleen A. Montgomery. In the great majority of his workweeks, Arellano performed over 40 hours of work. But except for one single week,

1

Defendants never paid him the time-and-a-half overtime premium required by the federal Fair Labor Standards Act.

## Jurisdiction and Venue

2. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question).

3. The Court has personal jurisdiction over Defendant Clark Construction Group, LLC because (1) it transacts business in Virginia and contracts to supply services in Virginia, including the labor that Arellano performed in Virginia and (2) as Arellano's employer, Clark Construction's acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

4. The Court has personal jurisdiction over Defendant Grasslands Farm, LLC because (1) it is domiciled in Virginia, (2) it owns the property in Virginia where Arellano performed his work and (3) as Arellano's employer, Grassland Farms' acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

5. The Court has personal jurisdiction over Defendant Kathleen A. Montgomery because (1) she is a Virginia resident and (2) as Arellano's employer, her acts and omissions in Virginia gave rise to the wage violations that underlie this complaint.

6. Venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to Arellano's claims occurred in Fauquier County. *See* 28 U.S.C. § 1391(b)(2). The Alexandria Division is the proper division for the same reason. *See* Local Rule 3(B)(1).

## PARTIES

7. Plaintiff Jorge Arellano is an adult resident of Virginia.

8. Defendant Clark Construction Group, LLC is a Maryland limited-liability company located in Bethesda, Maryland.

9. Defendant Grasslands Farm, LLC is a Virginia limited-liability company.

10. Defendant Kathleen A. Montgomery is an adult resident of Virginia.

## FACTS

### Defendants

11. Defendant Clark Construction Group, LLC is one of the largest building and civil construction firms in the United States.

12. Upon information and belief, Defendant Kathleen A. Montgomery is married to Dan T. Montgomery, a former president and part owner of Clark Construction. In 2010, the Montgomerys purchased a sprawling 500-acre estate in Fauquier County, Virginia known as Grasslands Farm. The record owner of the property is Defendant Grasslands Farm, LLC.

13. Upon information and belief, throughout Arellano's employment, Defendants had the power to hire, fire, or discipline workers at all positions at Grasslands Farm.

14. Upon information and belief, throughout Arellano's employment, Defendants had the power to direct, control, or supervise his work, whether directly or indirectly.

15. Upon information and belief, Defendants directly or indirectly set Arellano's work schedule, or had the power to do so.

16. Upon information and belief, Defendants determined Arellano's pay rate and method of payment, or had the power to do so.

17. Upon information and belief, Defendants maintained all records related to Arellano's employment.

18. Upon information and belief, Defendants provided Arellano with all tools and equipment needed to do his job.

19. Defendants' gross annual volume of business exceeded $500,000 at all relevant times.

20. Upon information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

21. Upon information and belief, at all relevant times, Defendants regularly ordered and received supplies that had traveled through interstate commerce.

### Plaintiff's Work Generally

22. Jorge Arellano was hired to work at Grasslands Farm in or around June 2014. He then worked for Defendants on a full-time, year-round basis through around April 2019.

23. Throughout Arellano's employment at Grasslands Farm, Kathleen Montgomery came to the property about once a week. She would typically stay at the Farm for a day or two and then return to her permanent residence for the rest of the week.

24. Arellano was hired by Mark Ramsey, who at that time was an employee of Grasslands Farm, LLC. Ramsey managed and maintained the roads and grounds of the Grasslands Farm estate.

25. Throughout his employment at Grasslands Farm, Arellano worked primarily as a grounds-maintenance worker. His principal duties were cutting the grass, clearing the leaves with a leaf blower, caring for trees on the property, clearing branches, and sometimes hauling stone that other workers were using to build and restore stone fences on the property. He also helped demolish some old buildings on the property that the Montgomerys wished to replace with newer ones.

26. Arellano also performed some animal-husbandry duties, caring for horses or chickens on the property for about an hour or two each workday, but he spent a clear majority of his day on grounds-maintenance tasks.

27. During his first three or four months working for Defendants, Arellano was supervised primarily by Mark Ramsey, the Grasslands Farm LLC employee who had hired him. Arellano quickly became proficient in his duties and was soon able to complete his daily tasks with minimal supervision, with Ramsey simply telling him when he was needed somewhere else. During this time, if Arellano needed to miss a day (e.g., due to illness), he notified Ramsey.

28. After about three or four months, Ramsey left his job at Grasslands Farm. The property remained without a full-time manager for approximately the next one-and-a-half to two years. Arellano continued to perform grounds-maintenance work during this time, but dealt more directly with Kathleen Montgomery. For example, on one occasion Montgomery and Arellano negotiated a change to Arellano's schedule whereby Arellano would work Tuesday to Saturday rather than Monday to Saturday. During this time, if Arellano needed to miss a day (e.g., due to illness), Arellano notified Montgomery directly.

29. Montgomery continued to come to the Farm about once a week, see what needed to be done, and tell Arellano to do it. Montgomery would also direct Arellano to perform additional jobs in addition to his regular tasks, such as cleaning windows, clearing gutters, or cleaning the porch.

30. After about a year-and-a-half or two years of having no grounds manager, Montgomery hired a man named Bob Keller who, upon information and belief, was formerly affiliated with Clark Construction. Keller was initially hired as a laborer but was then made the

grounds manager. Keller took over the day-to-day supervision of Arellano for the rest of Arellano's employment at Grasslands Farm.

## Pay Practices and Pay Problems

31. Throughout Arellano's employment, Defendants paid him once a week by check.

32. The entities that paid Arellano changed during the course of his employment. From June 2014 through December 21, 2014, Arellano was paid by Clark Construction. For about the next two years, he was paid by Potomac Real Estate Group, LLC—a company with the same mailing address as Clark Construction. Starting around January 2017, he was paid by 1906 Group, LLC—a Virginia company of which former Clark Construction executive Dan T. Montgomery is the sole shareholder. And beginning on the week of June 25, 2018, Arellano returned to being paid directly by Clark Construction again.

33. Arellano received raises several times during the course of his employment. Arellano's starting wage in June 2014 was $12.00 per hour. Around the beginning of September 2014, he got a raise to $12.75 per hour. By the end of that same month, his wage went up to $15.00. In late November 2015, his hourly wage increased to $15.50. In March 2017, he got a raise to $16.50 per hour. In September 2017, he got another raise to $18.00 per hour. In late 2018, his hourly wage increased to $19.00.

34. Defendants required Arellano to use a punch clock to record his work hours. Each of Arellano's weekly paystubs stated the hours he had worked that week.

35. Defendants' own paystubs show that, during the three years immediately prior to the filing of this complaint, Arellano worked over 40 hours in at least 120 of his workweeks.

36. Defendants own paystubs also show that Arellano received a time-and-a-half overtime premium for only one of those workweeks: the week of June 25, 2018. For all of his other overtime weeks, he received no overtime premium whatsoever.

37. Plaintiff does not recall ever seeing notices posted in a conspicuous place explaining the Fair Labor Standards Act.

### End of Plaintiff's Employment

38. On or around April 22, 2019, Arellano asked Bob Keller for a one-dollar-an-hour raise. Keller said that he would talk to a secretary named "Laura" about it, and that Laura and Kathleen Montgomery would decide whether he would get the raise.

39. The next day, Laura approached Arellano and told him that he would not be getting the raise, and that he had two options: quit his employment or be fired. Arellano asked whether he was really being fired for asking for a dollar-an-hour raise, and Laura confirmed that he was. Arellano told Laura "Okay, fire me."

40. Laura then gave Arellano a proposed separation agreement to sign that set forth the terms of his "separation of employment with Clark Construction Group, LLC." The proposed agreement offered Arellano a lump sum of $1,520 in exchange for Arellano's waiving all potential legal claims he might have against Clark Construction; 1906 Group LLC; CRC Companies, LLC; Grasslands Farm LLC; and the Montgomery family. It also required Arellano to acknowledge that Clark Construction had paid him all wages owed to him.

41. Arellano did not sign the proposed separation agreement.

### CLAIMS

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

42. At all times relevant to this action:

    a. Plaintiff Jorge Arellano was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);

    b. Defendants were Arellano's "employers" within the meaning of 29 U.S.C. § 203(d);

    c. Defendants "employed" Arellano within the meaning of 29 U.S.C. § 203(g); and

    d. Arellano was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

43. Defendants' FLSA violations were "willful" within the meaning of 29 U.S.C. § 255(a).

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

44. Jorge Arellano worked over 40 hours in at least 120 workweeks.

45. Defendants never paid Arellano a time-and-a-half overtime premium for any of the hours that he worked beyond 40 in any such workweek, other than the workweek beginning June 25, 2018.

46. By failing to pay Arellano an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

### **REQUESTED RELIEF**

Wherefore, Arellano respectfully requests that this court provide the following relief:

47. Declare that no statute of limitations applies to Arellano's Fair Labor Standards Act overtime claim, based on Defendants' failure to post notices in a conspicuous place explaining the Act. In the alternative, declare that Defendants' FLSA violations were "willful" under 29 U.S.C. § 255(a), such that a three-year statute of limitations applies;

48. Award Arellano his actual damages under the FLSA in the amount of all unpaid overtime wages, jointly and severally against all Defendants, in an amount to be proved at trial;

49. Award Arellano an additional amount as liquidated damages equal to his unpaid overtime wages, jointly and severally against all Defendants, pursuant to 29 U.S.C. § 216(b);

50. Award Arellano his costs and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b), jointly and severally against all Defendants; and

51. Any other relief the Court deems just and proper.

                                               Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                                Date: May 1, 2019
Nicholas Cooper Marritz (VA Bar No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
E: nicholas@justice4all.org

*Counsel for Jorge Arellano*